**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                        ) | Criminal No. 24-cr-00463 (CJN) |
| ) | |
| DEEPAK JAIN,              ) | |
| ) | |
| Defendant.            ) | |
| ) | |

**DEFENDANT DEEPAK JAIN'S MOTION TO COMPEL
DISCOVERY OF INTERNAL U.S. SECURITIES AND EXCHANGE
COMMISSION FILES UNDER *BRADY* AND RULE 16 AND
<u>INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

    A.    The government charges Mr. Jain with defrauding the SEC ...................................1

    B.    The government fails to collect internal documents from the SEC ........................3

ARGUMENT ..........................................................................................................................6

    A.    The internal SEC documents are potentially exculpatory and impeaching and at the very least material to the preparation of Mr. Jain's defense .............................6

    B.    The internal SEC documents are within the government's possession, custody, and control under *Brady* and Rule 16 ...................................................................9

CONCLUSION ....................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
 373 U.S. 83 (1963) ..................................................................................................6, 7, 9, 10, 11

*Giglio v. United States*,
 405 U.S. 150 (1972) ..................................................................................................................9

*Kyles v. Whitley*,
 514 U.S. 419 (1995) ................................................................................................................10

*United States v. Bingert Sturgeon*,
 No. 21-cr-91, 2023 WL 3203092 (D.D.C. May 2, 2023) .........................................................10

*United States v. Brooks*,
 966 F.2d 1500 (D.C. Cir. 1992) ..............................................................................10, 11, 12, 13

*United States v. LaRouche Campaign*,
 695 F. Supp. 1265 (D. Mass. 1988) ........................................................................................13

*United States v. Libby*,
 429 F. Supp. 2d 1 (D.D.C. 2006) .........................................................................................7, 10

*United States v. Liberto*,
 No. 19-cr-600, 2021 WL 4459219 (D. Md. Sept. 29, 2021) ...................................................10

*United States v. Lloyd*,
 992 F.2d 348 (D.C. Cir. 1993) ..................................................................................................7

*United States v. Marshall*,
 132 F.3d 63 (D.C. Cir. 1998) ...............................................................................................7, 11

*United States v. Naegele*,
 468 F. Supp. 2d 150 (D.D.C. 2007) ........................................................................................10

*United States v. Poindexter*,
 727 F. Supp. 1470 (D.D.C. 1989) ...........................................................................6, 10, 11, 12, 13

*United States v. Safavian*,
 233 F.R.D. 12, 16 (D.D.C. 2005) ..............................................................................................7

*United States v. Sheppard*,
 No. 21-cr-203, 2022 WL 17978837 (D.D.C. Dec. 28, 2022) ..................................................13

*United States v. Trie*,
    21 F. Supp. 2d 7 (D.D.C. 1998) .......................................................................................... 6, 7

*United States v. Trump*,
    753 F. Supp. 3d 17 (D.D.C. 2024) ........................................................................ 7, 10, 11, 12

*United States v. W.R. Grace*,
    401 F. Supp. 2d 1069 (D. Mont. 2005) ................................................................................. 10

*United States v. Wang*,
    No. 24-cr-211, 2025 WL 50520 (D. Md. Jan. 8, 2025) ............................................................ 8

*United States v. Wood*,
    57 F.3d 733 (9th Cir. 1995) .................................................................................................. 10

**Statutes & Rules**

18 U.S.C. § 1031 ............................................................................................................................ 3

Fed. R. Crim. P. 16 ................................................................................................... 6, 7, 9, 10, 11

## INTRODUCTION

Defendant Deepak Jain submits this motion to compel discovery of certain U.S. Securities and Exchange Commission ("SEC") documents that are material to the preparation of Mr. Jain's defense and are in the custody or control of the prosecution team. The Indictment charges Mr. Jain with engaging in a scheme, through his company AiNet, to defraud the SEC by misrepresenting the capabilities of AiNet's Beltsville facility in order to procure a contract from the SEC to house its data from 2012 to 2018. To be clear, the SEC received the benefit of its contract: the SEC stored its data at the Beltsville data center for *six years*. But the SEC now claims, and the government now alleges, that the SEC would not have contracted with AiNet if it had been aware of certain alleged "misrepresentations" about the data center's features and certifications. Yet the government has not collected and produced the discovery needed for it to prove, or for Mr. Jain to refute, that these alleged misrepresentations were actually material to the SEC's decision to choose and remain at the Beltsville data center. These materials exist and are in the government's possession, custody, and control. This Court should thus compel the government to review the SEC's internal files for any materials pertaining to this case and to produce all requested documents so Mr. Jain is able to prepare his defense against these charges.

## BACKGROUND

### A. The government charges Mr. Jain with defrauding the SEC.

As alleged in the Indictment, Deepak Jain was the CEO of AiNet, a company that operates a data center in Beltsville, Maryland. Dkt. 1, at ¶ 1. In 2012, the SEC issued a request for proposals for a data center to store the SEC's data. *Id.* at ¶ 6. The required specifications included compliance with certain TIA-942 standards established by the Telecommunications Industry Association ("TIA"), a private standard-setting organization. *Id.* The TIA-942 standards allegedly "ensure adequate data center reliability, redundancy, security, and availability." *Id.* Based on these

1

standards, TIA establishes criteria for sorting data centers into Tiers, with Tier IV offering "more redundancy, higher availability, and better security" compared to Tiers I through III. *Id.* at ¶ 7.

Based on the defense's ongoing review of the discovery produced to date, the SEC's request for proposals and the contract between the parties not only contained certain TIA-942 standards, but also contained requirements specific to the SEC, which were different from and, in some cases, conflicted with and/or contradicted the TIA-942 requirements. *See* Ex. A. In 2012, AiNet submitted a proposal to the SEC, the parties negotiated and, prior to the SEC's award of the contract to AiNet, SEC employees toured the Beltsville data center to confirm that it met the SEC's requirements. The Indictment does not assert that any certification allegedly submitted by AiNet had any material impact on the SEC's pre-award inspection of the Beltsville data center. Rather, the Indictment alleges that "Employee A prevented the SEC from viewing important infrastructure that would have shown the Beltsville Data Center did not meet Tier IV requirements." Dkt. 1, at ¶ 11(c). Notwithstanding this alleged interference by Employee A, following its inspection of the Beltsville facility, the SEC awarded the contract to AiNet and stored its data at the Beltsville data center for six years, renewing five of the nine option years under the contract. On September 13, 2017, the SEC provided AiNet with its Notice of Intent to Exercise Option Year Five of the data center contract. *See* Ex. B.[1]

Less than three weeks later, on September 29, 2017, the SEC Office of Inspector General ("OIG") issued a report criticizing the SEC's contracting processes and management of its data

---

[1] Contemporaneous with the filing of this motion, Mr. Jain has filed a Motion for Leave to File Under Seal Exhibits to Motion to Compel. Through that motion, Mr. Jain seeks the Court's leave to file unredacted copies of Exhibits A, B, D, J, L, M, N, and O under seal, and redacted copies on the public record.

2

centers. Ex. C.[2] In the wake of this criticism, the SEC reversed course, declined to renew the sixth option year, and terminated AiNet's contract. Dkt. 1, at ¶ 11(h). After the SEC terminated the contract, AiNet filed two claims with the SEC and then appealed to the Civilian Board of Contract Appeals, seeking redress for costs it claimed the SEC owed under the contract. *See AiNet Corporation v. Secs. & Exch. Comm'n*, CBCA No. 6692, Contract No. SECHG1-13-D-0001.

This Indictment followed. The government accuses Mr. Jain of engaging in a scheme to commit major fraud against the United States by tricking the SEC into awarding its data center contract to AiNet. 18 U.S.C. § 1031. Specifically, the government alleges that Mr. Jain misrepresented the capabilities and qualifications of the Beltsville data center, including its compliance with TIA-942 standards. Dkt. 1, at ¶ 9. The government also claims that Mr. Jain made a false statement to the SEC by submitting a false certification letter from Uptime *Council*, apparently to trick the SEC into believing that the Uptime *Institute*, another TIA-942 auditing body, had certified the data center as a Tier IV data center. *Id.*

### B. The government fails to collect internal documents from the SEC.

To date, the prosecution has produced copious *external* communications between the SEC and individuals associated with AiNET, including Mr. Jain, about the Beltsville data center, the proposal process, the parties' performance of the contract, and the termination of the contract. The prosecution has also produced the documents from the case file held by one SEC OIG Special Agent, which appears to have contained a handful of internal SEC communications. But the government has not otherwise produced the relevant *internal* documents and communications within the SEC about Mr. Jain, AiNet, or the Beltsville data center. These internal documents

---

[2] On April 3, 2025, the government produced to defense counsel an unredacted copy of this report. For the purposes of this motion, Mr. Jain submits only the redacted version of the report that has been released to the public by the SEC.

3

certainly exist, as SEC employees necessarily talked internally—at the time of the proposal, during the life of the contract, and during the administrative dispute between AiNet and the SEC—about the agency's search for a data center, the criteria the agency actually cared about in choosing a data center, the employees' honest opinions about the Beltsville data center and its capabilities, and the negotiation and terms of the contract with the data center. *See, e.g.,* Ex. D (SEC employee discussing his impression of the Uptime Council certification with SEC auditors).

Mr. Jain requested these internal SEC documents from the prosecution on November 7, 2024, specifically asking for:

- Internal SEC emails and communications about the SEC's proposal for the data center, the Beltsville data center, and Mr. Jain;
- Internal documents and communications relating to the SEC's OIG report about the Beltsville data center, which triggered the present investigation and prosecution;
- Communications between the SEC and EPI, the company that the SEC hired to "audit" the Beltsville data center.

Ex. E, at 4 ¶¶ 8, 15; 5 ¶ 24; 10 ¶¶ 2, 5, 7, 8; 11 ¶ 13–15, 17; 12–14 ¶¶ 24–48; 17 ¶¶ 1, 4; 18 ¶ 9. Mr. Jain sent a follow-up request on December 6, 2024, reiterating his request for these internal documents. Ex. F, at ¶¶ 3–16. The government did not engage on the substance of this request until February 7, 2025, when the prosecution informed the defense that "to the extent that the Government possesses these materials, the Government has already produced the materials." Ex. G, at 1–2. On February 13, Mr. Jain again asked the prosecution for these materials. Ex. H, at 2, 4.

The parties conferred on March 12, and defense counsel reiterated the request. Ex. I, ¶¶ 2–3. The government stated that it had produced all documents that it had in its own files and the files of the SEC investigators on the case, but then explained that neither it, the FBI agents, nor the SEC investigators had requested all potentially relevant documents from the SEC or reviewed

4

the SEC's internal files for responsive materials. *Id.* at ¶ 4(e)–(f). The government took the position that it had no obligation to do so because, as it sees it, the SEC is not part of the prosecution team. *Id.* at ¶ 4(a).

The government produced an unredacted version of the SEC OIG Report on April 3. On April 11, Mr. Jain sent another discovery letter to the government seeking documents and information from the SEC's internal files regarding the unredacted OIG Report. Ex. J.[3] The government responded on April 16, repeating its position shared during the parties' March 12th meet-and-confer: namely, that "[t]he Government has turned over all material within its possession responsive to [Mr. Jain's] requests outlined in the April 11 letter," and that if "the Government receives additional material responsive to [Mr. Jain's] requests that is subject to the Government's discovery obligations, we will produce that material in due course." Ex. K.

On April 18, the parties conferred on Mr. Jain's April 11th letter and the government's response. *Id.* at ¶ 7. The parties reiterated the positions advanced in their respective correspondence and were unable to reach agreement as to the government's obligations to produce the requested discovery. *Id.* at ¶ 8. This motion follows.

---

[3] Because Mr. Jain's April 11th letter sets forth requests containing non-public information from the unredacted OIG Report, Mr. Jain has filed a redacted copy of this letter on the public record, Ex. J, and has contemporaneously moved to file an unredacted version of this letter under seal.

The April 11th letter also requested a second category of documents and information relating to certain discovery produced by the government concerning the prosecution's communications with the TIA. Ex. J, at 4. As these requests do not pertain to documents within the possession, custody, or control of the SEC, Mr. Jain does not address the requests in this motion.

## ARGUMENT

These internal SEC documents must be produced under Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, the government must produce all evidence in its possession that is "favorable to the accused." *United States v. Trie*, 21 F. Supp. 2d 7, 23 (D.D.C. 1998). Under Rule 16, the government must produce any items "material to preparing the defense" that are "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E)(i). Together, Rule 16 and *Brady* provide, "in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid [a defendant] in presenting his side of the case." *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989).

These internal SEC materials are material to Mr. Jain's defense. This case will rise and fall on the materiality of the alleged "misrepresentations" about the features and qualifications of the Beltsville data center. The SEC's internal communications about its proposal criteria and its honest opinions of the Beltsville data center are likely to be far more candid than the public-facing statements the SEC has made to Mr. Jain, or even to the U.S. Department of Justice ("DOJ"). These internal SEC materials are in the possession, custody, and control of the prosecution team. As explained below, the SEC and DOJ have acted hand-in-hand during this investigation and prosecution. Having had ready access to any inculpatory materials from the SEC's files, the prosecution has an obligation to also collect and produce any potentially exculpatory materials.

### A. The internal SEC documents are potentially exculpatory and impeaching and at the very least material to the preparation of Mr. Jain's defense.

These internal SEC documents are material to Mr. Jain's defense because, at the very least, they directly bear on the materiality of any purported misrepresentations about the Beltsville data center's qualifications. "[E]vidence is material" under Rule 16 "as long as there is a strong

indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted). This "is not a heavy burden." *Id.* (internal quotation marks omitted). "[B]oth inculpatory and exculpatory evidence may be material to the preparation of a defense to ensure that the defendant is aware of both the 'potential pitfalls' and the strengths of his defense strategy." *United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006) (quoting *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998)).

Similarly, in this district, evidence counts as material under *Brady* so long as it furthers the defense case. "[T]he Government has an affirmative duty during all phases of a criminal case to 'produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial.'" *United States v. Trump*, 753 F. Supp. 3d 17, 1 (D.D.C. 2024) (quoting *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005)). "That includes all favorable evidence that is itself admissible or that is likely to lead to favorable evidence that would be admissible, or that could be used to impeach a prosecution witness." *Id.* (internal quotation marks omitted). "[C]ourts in this jurisdiction look with disfavor on narrow readings of the government's *Brady* [and Rule 16] obligations; it simply is insufficient for the government to offer niggling excuses for its failure to provide potentially exculpatory evidence to the defendant, and it does so at its peril." *Trie*, 21 F. Supp. 2d at 24 (internal quotation marks omitted).

Here, the SEC internal files are certain to contain information that is exculpatory, impeaching, or at least helpful to the preparation of Mr. Jain's defense. The Indictment alleges that Mr. Jain engaged in a scheme to defraud the SEC by representing that the Beltsville data center complied with certain standards when it did not, and by obtaining a sham certification to hide those

7

deficiencies. Dkt. 1, at ¶ 9, 4 ¶ 11(c)–(f). To prove this scheme to defraud, the government must show that the purported misrepresentations were "material" to the SEC's decision to grant the contract to the Beltsville data center and remain there for the next six years. *United States v. Wang*, No. 24-cr-211, 2025 WL 50520, at *3–4 (D. Md. Jan. 8, 2025). The SEC's internal communications and documents about that contract indisputably bear on that necessary element of the charged crimes.

For instance, the Indictment alleges that the SEC did not get the benefit of its bargain because the Beltsville data center "did not actually meet the minimum standard required by the SEC." Dkt. 1, at ¶ 11(e). The SEC's bid documents set out dozens of pages of requirements, including compliance with certain requirements from the TIA-942 protocol. To date, the government has not specifically identified exactly which criteria, in either the SEC's bid documents, the different iterations of the TIA-942 standards, or the SEC's own different standards, the Beltsville data center allegedly did not meet. But SEC employees certainly had internal discussions about the bid criteria, the TIA-942 protocol, and their own agency's different standards, and likely expressed opinions on which of those many criteria (some conflicting) actually mattered to the SEC's decision to grant the contract to AiNet. Those internal, contemporaneous statements about the contract requirements go to the heart of materiality of any purported misrepresentation or false certification.

Or, as another example, the Indictment alleges that to hide the data center's deficiencies, Mr. Jain "created Uptime Council," a certification organization, "in order to deceive the SEC into thinking that Uptime Council was an independent auditor of data centers." Dkt. 1, at ¶ 9. The government's theory appears to be that Mr. Jain purposefully gave Uptime Council a name similar to Uptime Institute, another certification organization, so as to confuse the SEC. If the Uptime

8

Council certification was material to the SEC's decision, as the government suggests it was, then SEC employees certainly discussed the Uptime Council and the certification, and likely either expressed confusion about the two institutions or recognized that the two were different.[4] Or the SEC did not discuss Uptime Council at all at the time of the contract award and instead discussed it only after the SEC OIG's office began its performance audit that eventually resulted in the September 2017 OIG Report. *See* Ex. C. This would suggest the SEC was internally discussing the Uptime Council certification only in the context of deflecting the OIG's criticism of its data center contract management. Indeed, the only internal SEC communication the defense has located in the discovery to date was dated May 2017—four months after the OIG's performance audit began in January 2017. Ex. D. For these reasons, that information is relevant to the preparation of Mr. Jain's defense.

At the very least, these internal documents likely contain impeachment material under *Giglio v. United States*, 405 U.S. 150 (1972). To prove its case, the prosecution will necessarily have to call the employees from the SEC that drafted the bid requirements, negotiated the contract, and oversaw the performance of the contract. Those employees' internal communications could contradict their testimony at trial or otherwise cast doubt on their credibility.

### B. The internal SEC documents are within the government's possession, custody, and control under *Brady* and Rule 16.

These internal SEC documents are in the government's possession because the SEC is closely aligned with the DOJ and has significantly aided the investigation and prosecution of this case. The government's duty with respect to criminal discovery is not limited to the evidence in

---

[4] As stated previously, in its ongoing review of the discovery produced to date, the defense has only located one such communication about Uptime Council, after the start of this investigation. Ex. D. Given the emphasis the government has placed on this certification, there must be more.

its own hands but extends to that held by "others acting on the government's behalf." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Evidence is considered as being in the government's possession, custody, or control whenever the government and its agents "ha[ve] knowledge of and access to the" evidence. *Libby*, 429 F. Supp. 2d at 7 n.11. This means that, under *Brady*, the government has "a duty to search" "files maintained by branches of government ***closely aligned with the prosecution***." *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (internal quotation marks omitted and emphasis added). Likewise, under Rule 16, the government must produce "documents in the hands of the prosecutor, any investigative unit under the prosecutor's control, and ***any other federal agency allied with the prosecution or involved in the prosecution of criminal litigation***." *Poindexter*, 727 F. Supp. at 1477 (emphasis added); *see Trump*, 753 F. Supp.3d at 27 (recognizing that the "same definition" of possession, custody, and control governs Rule 16 and *Brady*). Indeed, courts have required the prosecution to review and produce evidence held by cooperating agencies ranging from the White House, *see Poindexter*, 727 F. Supp. at 1478; to the CIA, *see Libby*, 429 F. Supp. 2d at 11; the Secret Service, *United States v. Bingert Sturgeon*, No. 21-cr-91, 2023 WL 3203092, at *3 (D.D.C. May 2, 2023); the U.S. Trustee, *see United States v. Naegele*, 468 F. Supp. 2d 150, 154 (D.D.C. 2007); the EPA, *see United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1082 (D. Mont. 2005); the Postal Service, *see United States v. Liberto*, No. 19-cr-600, 2021 WL 4459219, at *7–8 (D. Md. Sept. 29, 2021); and the FDA, *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995).

This requirement furthers "the purpose and spirit of the rules governing discovery in criminal cases." *Libby*, 429 F. Supp. 2d at 11. "Courts have in the main been more concerned with fairness to the defendant, on the one hand, and the government's ease of access to the documents sought, on the other, than with the issue whether the documents are actually within the physical

10

possession of the prosecutor." *Poindexter*, 727 F. Supp. at 1477. "A prosecutor may not sandbag a defendant by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial." *Marshall*, 132 F. 3d at 69 (internal quotation marks omitted). This remains true whether the prosecutor "selectively sought only those [agency] documents that supported his case," or whether he "took what was given to him" by the agency. *Poindexter*, 727 F. Supp. at 1478 n.14.

So it is here. The SEC is "closely aligned" and "allied" with the prosecution. *Brooks*, 966 F.2d at 1503 (internal quotation marks omitted); *Poindexter*, 727 F. Supp. at 1477. The prosecution thus has an obligation under both *Brady* and Rule 16 to review the SEC's files and produce responsive documents. To start, there is clearly a strong "working relationship" between the prosecution team here and the SEC. *Trump*, 753 F. Supp. 3d at 25 (internal quotation marks omitted). The SEC appears to have conducted most of the present investigation and gathered most of the documents that underlie the Indictment. *See, e.g.,* Ex. L (recording all the evidence that the SEC collected against AiNet during contract dispute between the parties); Ex. M (same). And SEC agents participated in each witness interview, sometimes side-by-side with the DOJ prosecutors; of the 62 Memoranda of Interview (MOI) that have been produced by the government to date, 61 have been prepared by SEC OIG Special Agents, and the remaining MOI was prepared by a Senior Special Counsel in the SEC's Office of General Counsel. *See, e.g.,* Ex. N.

The prosecution has also had "easy access" to SEC files, and can readily obtain the internal communications and other internal SEC documents. *Trump*, 753 F. Supp. 3d at 26 (internal quotation marks omitted). DOJ has shared numerous documents originally held by the SEC, including invoice records, corporate registration documents, and internet domain searches. Indeed, the SEC Office of General Counsel has freely shared information from the discovery process in its

administrative matter with AiNET with the prosecution team, as the government's *Jencks* production to date makes clear. *See, e.g.,* Ex. L. The SEC apparently even gave DOJ access to all external emails between SEC employees and individuals at AiNet, pulling "all emails the sec.gov domain sent to or received from the AiNET domain for the period January 1, 2009, through November 21, 2022." Ex. G, at 1; Ex. O. There is no reason that the SEC could pull these *external* emails for DOJ but not *internal* ones. *See Trump*, 753 F. Supp. 3d at 49 (recognizing the difference between an "agency that merely complies with a prosecutor's request for a limited, specific set of documents" through compulsory process and an agency that "substantially deploys its own personnel and resources to conduct a broad or open-ended search for evidence that might be helpful to the prosecution").

Nothing about "the nature of the files at issue" makes them difficult to access. *Id.* at 26 (internal quotation marks omitted). The SEC's internal correspondence about its bid for a data center does not implicate national security concerns, for instance. And there is more than "enough of a prospect of exculpatory materials to warrant a search," as the SEC inevitably discussed the proposal and the contract internally—and more candidly than they did in statements to DOJ during this investigation. *Id.* at 25 (quoting *Brooks*, 966 F.2d at 1503).

Having "had access in the course of its investigation to extensive" evidence from the SEC and having "benefitted from [its] cooperation," the prosecution "cannot now, in fairness, be permitted to disclaim all responsibility for obtaining [SEC] documents that are material to the preparation of the defense." *Poindexter*, 727 F. Supp. at 1478. The SEC has been, and continues to be, closely aligned with this prosecution. Just as DOJ has readily obtained external communications from the SEC, it can just as readily obtain internal SEC communications relating to the allegations in the Indictment as well.

12

The government conceded during the parties' meet-and-confer that it had an obligation to obtain documents from the files of the specific SEC OIG investigative agents that worked on this case. Ex. I at ¶ 4(b). But the government insisted that it did not have to look past those individuals' files and obtain documents from others in the SEC, as the SEC OIG is a separate division from the rest of the SEC. *Id.* at ¶ 4(b)–(c). That reasoning turns this Circuit's precedent on its head. "[T]he government cannot be compartmentalized … as readily as [the prosecution] suggests." *Poindexter*, 727 F. Supp. at 1477. If the "bureaucratic boundary" between two cooperating federal agencies is "too weak to limit the duty" to search, then certainly the boundaries between divisions within an agency are too weak, as are any boundaries between particular employees in that agency. *Brooks*, 966 F.2d at 1503. The standard for production, as articulated time and again in this district's precedents, is whether the cooperating federal *agency* is aligned with the prosecution, not whether individual employees or particular divisions of an agency aided with the investigation. *Poindexter*, 727 F. Supp. at 1477; *see, e.g., United States v. Sheppard*, No. 21-cr-203, 2022 WL 17978837, at *11 (D.D.C. Dec. 28, 2022) (in finding Secret Service to be part of prosecution team, never suggesting that finding is limited to the particular agents involved in the investigation of that defendant). Otherwise, the government could readily sidestep its discovery obligations by limiting its contact to the investigative arm at the cooperating agency and disavowing any duty to request any exculpatory information held by the rest of the agency. The government's duty is not so narrow. "If . . . the government attorneys and persons in any agency aiding in the investigation at any stage have extended their search for possibly inculpatory evidence to an office of another government agency, ***the search for exculpatory evidence must extend to that office and must be at least as thorough as was the search for inculpatory evidence***." *United States v. LaRouche Campaign*, 695 F. Supp. 1265, 1281 (D. Mass. 1988) (emphasis added); *accord Poindexter*, 727

13

F. Supp. at 1478. Indeed, it is concerning that the government indicted this case without obtaining and reviewing those internal SEC materials.

## CONCLUSION

For these reasons, Mr. Jain moves this Court to compel the government to fulfill its obligations under *Brady* and Rule 16 and to conduct a full review of the SEC's internal files for any information that is exculpatory, impeaching, or otherwise material to the preparation of Mr. Jain's defense.

Respectfully submitted,

/s/ Steven J. McCool
**STEVEN J. McCOOL**
D.C. Bar No. 429369
**JULIA M. COLEMAN**
D.C. Bar No. 1018085
**GRACE G. SIMMONS**
D.C. Bar No. 90024082
**McGUIREWOODS LLP**
888 16th Street N.W., Suite 500
Washington, D.C. 20006
Tel.: (202) 857-2424
Fax: (202) 828-3324
*smccool@mcguirewoods.com*
*jcoleman@mcguirewoods.com*
*gsimmons@mcguirewoods.com*

*Counsel for Deepak Jain*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 6th day of June 2025, the foregoing was served electronically on the counsel of record through the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and the document is available on the ECF system.

                                            /s/ Steven J. McCool
                                            STEVEN J. McCOOL